# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| PERFECT FIT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Docket No. 1:19-cv-160-NT |
| EDWARD ARONOWITZ, | ) ) ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION

Before me is Defendant Edward Aronowitz's motion dismiss or stay and to compel arbitration. (ECF No. 14). For the reasons that follow, the Defendant's motion is **GRANTED**.

## BACKGROUND

On December 31, 2003, Plaintiff Perfect Fit, LLC ("**Perfect Fit**")—then named Foster & Levesque—acquired a duty-gear distribution business called Perfect Fit/Shield Wallets, Inc. from Defendant Aronowitz and his brother. Compl. ¶¶ 18-20, 22. (ECF No. 1). As part of that transaction, Perfect Fit agreed to employ Aronowitz as a salesperson for ten years. Compl. ¶ 26. Perfect Fit also purchased "all rights and privileges in and to the name 'Perfect Fit Shield Wallets,' and all other general intangibles associated with the sale of products and operation of the company." Compl. ¶ 23. According to Perfect Fit, this included an email account created by Aronowitz named "pfsw@aol.com." Compl. ¶¶ 19, 24.

Perfect Fit employed Aronowitz until December 31, 2013, when his employment agreement expired. Compl. ¶ 31. Perfect Fit and Aronowitz then extended their relationship by entering into a five-year Independent Contractor Agreement dated December 31, 2013 (the "**IC Agreement**"). Compl. Ex. 2 (ECF No. 1-2). In addition to setting out Aronowitz's responsibilities as an independent sales representative for Perfect Fit, the IC Agreement included a covenant through which Aronowitz agreed not to compete with or solicit customers from Perfect Fit when his contract with Perfect Fit terminated. Compl. ¶¶ 33-37. The IC Agreement also included an arbitration provision, which stated in relevant part that "[a]ny controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by mediation . . . and if mediation does not resolve the dispute, by binding arbitration." IC Agreement ¶ 11.

Aronowitz worked as an independent contractor for Perfect Fit until December 31, 2018. Compl. ¶ 42. Throughout his time as an employee and as a contractor for Perfect Fit, Aronowitz had access to a broad array of customer information maintained by Perfect Fit, including Perfect Fit's customer lists. Compl. ¶ 49. Aronowitz also regularly made use of the "pfsw@aol.com" account to arrange sales and to conduct other company business. Compl. ¶ 43.

Shortly after Aronowitz left Perfect Fit, the company learned that Aronowitz had emailed Perfect Fit's customer lists and other confidential information to his personal email account. Compl. ¶¶ 55-58. Perfect Fit has since discovered that Aronowitz is now working as a salesperson for a competitor and is attempting to

solicit Perfect Fit's customers on the competitor's behalf. Compl. ¶¶ 63-64, 73-80. Perfect Fit has also determined that Aronowitz is the only person who knows the login credentials for the "pfsw@aol.com" account, which Perfect Fit believes continues to receive emails related to Perfect Fit's business. Compl. ¶ 60. Aronowitz has refused to provide Perfect Fit access to the account. Compl. ¶¶ 61-62.

On April 15, 2019, Perfect Fit filed suit against Aronowitz for breach of the parties' noncompetition agreement (Count V), misappropriation of trade secrets (Counts III, IV), and conversion of the "pfsw@aol.com" account (Count VII).[1] Along with its Complaint, Perfect Fit filed a motion for a temporary restraining order ("**TRO**") or a preliminary injunction to prevent Aronowitz from soliciting additional Perfect Fit customers. (ECF No. 3). On April 16, 2019, I declined to grant Perfect Fit's request for a TRO and directed the Defendant to inform the court within three days whether it intended to pursue arbitration under the IC Agreement. (ECF No. 10). The Defendant duly responded that it intended to move to compel arbitration of the Plaintiff's claims (ECF No. 11), and on April 24, 2019, filed the motion at bar.

## DISCUSSION

The Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing

---

[1] Perfect Fit also seeks a declaratory judgment as to the enforceability of the restrictive covenants in the IC Agreement (Count I), a declaratory judgment as to the ownership of the "pfsw@aol.com" account (Count II), and replevin of the "pfsw@aol.com" account (Count VI). Compl. ¶¶ 82-87, 88-91, 117-121.

3

that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA also provides for the stay of suits already in federal court pending arbitration. *Id.* § 3.

Federal courts will grant a motion to compel arbitration pursuant to the FAA when "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)).

The Defendant argues that the factors required to compel arbitration are present, and that I should dismiss this case because the Plaintiff's claims all are arbitrable. The Plaintiff concedes that the parties are bound by a written agreement to arbitrate and that at least some of the Plaintiff's claims fall within the scope of that agreement. The Plaintiff argues, however, that the Defendant has waived his right to arbitration. The Plaintiff further argues that only some of its claims are arbitrable, and that therefore if any of its claims are sent to arbitration, then this action should be stayed rather than dismissed in its entirety. I address each of these arguments in turn.

## I. Whether the Defendant has Waived His Right to Arbitrate

"[A]rbitration clauses are not set in cement: such clauses can be waived, either expressly or through conduct." *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 946-47 (1st Cir. 2014). Here, the Plaintiff asserts two theories of waiver. Both fail.

The Plaintiff first argues that the Defendant has waived his right to arbitrate by failing to undertake pre-arbitration steps laid out in the IC Agreement, including

4

proposing an arbitrator. Pl.'s Opp'n 13-15 (ECF No. 15). This argument is foreclosed in this forum by the First Circuit's decision in *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, which found that the question of whether a defendant had waived arbitration through his failure to comply with a contractual precondition to arbitration was for the arbitrator to decide. 638 F.3d 367, 383 (1st Cir. 2011).

The Plaintiff also claims that the Defendant has waived his right to arbitrate through dilatory conduct. Specifically, the Plaintiff takes issue with the Defendant's failure to respond promptly to the Plaintiff's request to arbitrate or to the Plaintiff's list of proposed arbitrators. Pl.'s Opp'n 14-15. "[W]aiver by conduct . . . due to litigation-related activity, is presumptively an issue for the court." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005). To determine if a litigation conduct–based waiver has occurred, I examine "whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice." *Joca-Roca Real Estate*, 772 F.3d at 948. In making this determination I consider

> the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced.

*Id.*

None of these factors support a finding of waiver here. As this case is still in its infancy, no discovery has taken place, no trial date has been set, and the Defendant's participation has been limited to an initial appearance, a letter, and the instant motion to compel arbitration. The alleged delay is also minimal. The IC

Agreement required the parties to pursue mediation before proceeding to arbitration, IC Agreement ¶ 11, which the parties did on March 29, 2019. Pl.'s Opp'n 6. Thereafter, the Plaintiff filed suit on April 15, 2019, and the Defendant moved to compel arbitration on April 24, 2019. The Plaintiff therefore complains of a delay amounting to less than one month, eight days of which are attributable to my scheduling orders in this action.[2] (ECF Nos. 10, 13). I am unconvinced that the Defendant's brief delay in pursuing arbitration has prejudiced the Plaintiff. The Defendant therefore has not waived his right to proceed to arbitration through his litigation conduct.

## II. Whether Counts II, VI, and VII Are Subject to Arbitration

Having determined that the Defendant has not waived his right to arbitrate, I next consider the Plaintiff's argument that some of its claims are not arbitrable. *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014) ("Unless the parties clearly and unmistakably provide otherwise, the court must resolve a disagreement among the parties as to whether an arbitration clause applies to a particular dispute." (quotation marks and citation omitted)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 52 (1st Cir. 2002) (quotation marks omitted). However, given the strong federal policy in favor of arbitration, *see AT&T Mobility LLC v. Concepcion*, 563 U.S.

---

[2] While the Plaintiff attempts to extend this period by faulting the Defendant's counsel for failing to lay the groundwork for arbitration ahead of mediation, until March 29th it was reasonable for the Defendant to expect that this matter could be resolved without resort to arbitration.

6

333, 346 (2011), courts must resolve any "ambiguities as to the scope of the arbitration clause . . . in favor of arbitration." *Grand Wireless, Inc.*, 748 F.3d at 7 (quotation marks omitted). Moreover, where the parties have agreed to a broadly-worded arbitration clause, disputes between those parties are presumptively arbitrable unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 8.

Here, the parties agreed to arbitrate "[a]ny controversy or claim arising out of, or relating to [the IC] Agreement." IC Agreement ¶ 11. This is precisely the kind of broad language to which the First Circuit has attached a strong presumption of arbitrability. *Grand Wireless, Inc.*, 748 F.3d at 8.

The Plaintiff has failed to rebut that presumption. The Plaintiff argues that its claims for declaratory judgment (Count II), replevin (Count VI), and conversion (Count VII) (the "**Email Account Claims**") relate only to the Plaintiff's ownership rights in the "pfsw@aol.com" email account. Pl.'s Opp'n 10. The Plaintiff further argues that those rights may be determined solely by reference to the purchase contract that the Plaintiff executed when it bought Perfect Fit/Shield Wallets from Aronowitz in 2003, and that therefore the Email Account Claims are completely unrelated to the employment conditions and covenants set out in the IC Agreement. Pl.'s Opp'n 10-11. But the Plaintiff's claims, including the Email Account Claims, all arise out of Aronowitz's purported continued use of the Plaintiff's property after the term of his contract with Perfect Fit had ended. As the Defendant notes, the harm that the Plaintiff claims to be suffering from being locked out of the account is bound

7

up in Aronowitz's current or potential use of the account to violate the IC Agreement's non-solicitation and non-competition provisions. *See* Pl.'s Opp'n 11. And as the Plaintiff acknowledges, Perfect Fit permitted Aronowitz to make regular use of the email account throughout his fifteen years at Perfect Fit—including to carry out his responsibilities under the IC Agreement. Compl. ¶ 43. The parties' disputes over who should control the "pfsw@aol.com" account and how that account may be used, represented in the Email Account Claims, are therefore at least "related to" the terms and obligations set out in the IC Agreement as required by the IC Agreement's arbitration clause. IC Agreement ¶ 11. Because it therefore cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the Email Account Claims, those claims are subject to arbitration. *See Grand Wireless, Inc.*, 748 F.3d at 8.

All that remains is the disposition of this case pending arbitration. Having found all the Plaintiff's claims arbitrable, I will dismiss this action. *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) ("Where one side is entitled to arbitration of a claim . . . a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable."); *see also Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006) (outlining the advantages of dismissal).[3]

---

[3] In its Opposition, the Plaintiff requests that if I grant the motion to compel arbitration, I also (1) issue an interim preliminary injunction preventing the Defendant from soliciting Perfect Fit clients until arbitration commences; and (2) order the Defendant to respond to the Plaintiff's list of proposed arbitrators by a date certain. Pl.'s Opp'n 16-17. I will not grant the requested interim injunction, as doing so would require me to needlessly prejudge issues that are plainly for the arbitrator and as I do not find that the status quo will be upset between now and the start of arbitration. *See Baychar, Inc. v. Frisby Techs.*, No. 01-CV-28-B-S, 2001 WL 856626, at *9 (D. Me. July 26, 2001). I also will not order

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion to compel arbitration. The action is **DISMISSED**.

SO ORDERED.

s/ Nancy Torresen
United States District Judge

Dated this 16th day of May, 2019.

---

the Defendant to act on the Plaintiff's arbitrator proposal by a date certain. Such an order is unnecessary. The Plaintiff seeks the scheduling order because of the Defendant's earlier, purportedly undue earlier delay in engaging in arbitration. But I have already found that the Defendant's delay was limited, and the Defendant himself has requested arbitration in this case. I therefore expect both parties will comply with my order compelling arbitration with appropriate speed.

9